## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **TICOR TITLE INSURANCE**<br>**OF FLORIDA,** | ) | **CONSOLIDATED CASES** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 07-2456-CM** |
| | ) | |
| | ) | |
| **NATIONS HOLDING CO., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |
| **FIDELITY NATIONAL TITLE**<br>**INSURANCE CO.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 07-2459-CM** |
| | ) | |
| | ) | |
| **NATIONS HOLDING CO., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

This consolidated case is before the court on two motions to dismiss. The first motion, filed

in the original case, No. 07-2456, is entitled Motions to Dismiss of Defendants Nations Title Agency

of Alabama, Inc., Nations Title Agency of the Carolinas, Inc., Nations Title Agency of Georgia, Inc.,

Nations Title Agency of Indiana, Inc., Nations Title Agency of Kentucky, Inc., Nations Title Agency

of Maryland, Inc., Nations Title Agency of Michigan, Inc., Nations Title Agency of Missouri, Inc.,

Nations Title Agency of Ohio, Inc., and Nations Title Agency of Oklahoma, Inc. (Doc. 20.)

The second motion to dismiss, entitled Motion to Dismiss by Defendants Nations Title

Agency of Indiana, Inc., Nations Title Agency of Kentucky, Inc., Nations Title Agency of Michigan, Inc., and Nations Title Agency of Ohio, Inc., was filed in No. 07-2459, which has been consolidated with the original case. (Doc. 31.)

The ten moving defendants raise jurisdictional questions: one of them claims the court lacks subject matter jurisdiction; six of them claim the court lacks personal jurisdiction; and three claim this court lacks both subject matter and personal jurisdiction. For the following reasons, the court grants the motions to dismiss.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff TICOR Title Insurance of Florida ("TICOR") and plaintiff Fidelity National Title Insurance Company ("Fidelity") had each independently entered into a contract appointing Nations Title Agency, Inc., ("Nations Title") and each of the named Nations Title agencies ("NTAs") as its agent for the purpose of issuing title insurance commitments, policies, and endorsements in certain areas of the country. Plaintiffs allege that (1) the defendant entities breached the contracts by committing one or more acts or omissions; (2) as a direct result of these acts or omissions, plaintiffs have suffered losses in excess of $1.1 million; (3) plaintiffs have made demands for indemnification and for the amounts plaintiffs were required to pay due to the acts or omissions for which defendants were liable; and (4) defendants have refused to indemnify or pay. (Doc. 1, at 4-5.)

On September 25, 2007, plaintiff TICOR filed a ninety-three-count complaint in this court against thirteen defendants. These defendants included Nations Holding Company ("Nations Holding"), Nations Title Agency, Inc. ("Nations Title"), and eleven NTAs. Specifically, it named Nations Title Agency of Alabama, Inc., Nations Title Agency of the Carolinas, Inc., Nations Title Agency of Georgia, Inc., Nations Title Agency of Indiana, Inc., Nations Title Agency of Kentucky,

2

Inc., Nations Title Agency of Louisiana, Inc., Nations Title Agency of Maryland, Inc., Nations Title Agency of Michigan, Inc., Nations Title Agency of Missouri, Inc., Nations Title Agency of Ohio, Inc., and Nations Title Agency of Oklahoma, Inc.  (Case No. 07-2459, Doc. 1.)

The next day, September 26, 2007, plaintiff Fidelity filed a twenty-one-count complaint in this court against seven of the same defendants: Nations Holding, Nations Title, and five NTAs, specifically, Nations Title Agency of Indiana, Inc., Nations Title Agency of Kentucky, Inc., Nations Title Agency of Louisiana, Inc., Nations Title Agency of Michigan, Inc., and Nations Title Agency of Ohio, Inc.  (Case No. 07-2459, Doc. 1.)

Each complaint asserts that the court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.[1] The complaints assert that (1) "each of the [NTA defendants] was an agent of Nations Title"; (2) Nations Title is "an agent of" and is "owned and controlled by" Nations Holding; and (3) "Nations Holding and Nations Title are ultimately responsible and liable for any viable claims made against the [NTA defendants] individually or in the aggregate."

Each count in the complaint names one of the NTA defendants and sets out specific factual circumstances — generally a particular mortgage transaction — allegedly giving rise to liability on the part of the NTA in the form of breach of contract, subrogation, and unjust enrichment.  Each claim seeks damages against the named NTA, Nations Title, and Nations Holding, jointly.  As to each of the NTA defendants seeking dismissal based on lack of subject matter jurisdiction, the damages set out in the claims are less than $75,000.  Plaintiffs' total damages, aggregating the

---

[1]  There is no dispute that the parties are diverse.  Plaintiffs are a Florida and a California corporation, respectively; defendants Nations Title and Nations Holding are Kansas corporations, and each Nations Title agency defendant is incorporated in its respective state and has its principal place of business there.

multiple alleged breaches of contract, far exceed $75,000.

In the TICOR case, Nations Holding, Nations Title, and Nations Title Agency of Louisiana, Inc., filed answers.  (No. 07-2456, Docs. 21, 22, 23.)   Ten of the eleven Nations Title agency defendants filed this motion to dismiss based on lack of personal jurisdiction (the Carolinas, Georgia, Indiana, Maryland, Ohio, and Oklahoma); subject matter jurisdiction (Missouri); or both (Alabama, Kentucky, and Michigan).  (No. 07-2456, Doc. 20.)

In the Fidelity case, Nations Holding, Nations Title, and Nations Title Agency of Louisiana, Inc., filed answers.  (No. 07-2459, Docs. 17, 18, 19.)  On February 26, 2008, Nations Title agencies of Indiana, Kentucky, Michigan, and Ohio filed a motion to dismiss based on lack of personal jurisdiction (Indiana and Ohio), or subject matter jurisdiction and personal jurisdiction (Kentucky and Michigan).  (No. 07-2459, Doc. 15; No. 07-2456, Doc. 31.)

This court consolidated the cases in early March, 2008, based on joint motion of the parties. (No. 07-2459, Docs. 12, 14, 20; No. 07-2456, Doc. 30.)[2]

This court must determine (1) whether it has subject matter jurisdiction over the claims against the Nations Title agencies of Alabama, Kentucky, Michigan, and Missouri, (the "SMJ defendants"); and (2) whether it has personal jurisdiction over the Nations Title agencies of Alabama, the Carolinas, Georgia, Indiana, Kentucky, Maryland, Michigan, Ohio, and Oklahoma (the "PJ defendants").

## II.  SUBJECT MATTER JURISDICTION

Where federal jurisdiction is based on diversity of citizenship, the matter in controversy must

---

[2] *TICOR Title Insurance of Florida v. Nations Holding Company, Inc.*, No. 07-2456, is designated the lead case.  All further references to the docket refer to filings in No. 07-2456.

4

exceed the sum or value of $75,000.  28 U.S.C. § 1332(a).  The plaintiff bears the burden to prove

compliance with the amount-in-controversy requirement.  *Adams v. Reliance Standard Life Ins. Co.*,

225 F.3d 1179, 1183 (10th Cir. 2000).

Here, the SMJ defendants contend that plaintiffs fail to make a prima facie case for subject

matter jurisdiction because: (1) the claims against each SMJ defendant do not exceed $75,000; and

(2) the claims against these defendants may not be aggregated because they arise from separate and

distinct incidents.

Plaintiffs do not dispute that the claims against each of the SMJ defendants is less than the

jurisdictional amount.  They assert that, because the moving defendants are each jointly liable with

Nations Title and Nations Holding, the claims may be aggregated.  (Doc. 26, at 1–3.)

Generally, every separate and distinct claim must individually meet the

amount-in-controversy requirement for subject-matter jurisdiction.  *Watson v. Blankinship*, 20 F.3d

383, 386 (10th Cir. 1994).  However, claims can be aggregated to satisfy the jurisdictional amount

requirement if they stem from a common and undivided interest.  *Elliott Indus. Ltd. P'ship v. BP*

*Am. Prod. Co.*, 407 F.3d 1091, 1105 (10th Cir. 2005).  The test for aggregation of claims of one

plaintiff against multiple defendants for the purpose of satisfying the amount-in-controversy

requirement is essentially the same as that for aggregating claims of multiple plaintiffs against one

defendant.  *Walter v. Ne. R.R.*, 147 U.S. 370, 373–74 (1893).  If multiple defendants are jointly

liable to plaintiff, and the claims against them are common and undivided, those claims may be

aggregated to fulfill the jurisdictional requirement.  *U.S. v. S. Pac. Transp. Co.*, 543 F.2d 676,

683–84 (9th Cir. 1976); *Motorists Mut. Ins. Co. v. Simpson*, 404 F.2d 511, 513 (7th Cir. 1968);

Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3704, at 80.

Here, plaintiffs' claims against each SMJ defendant arises from a separate and distinct incident, *i.e.*, a separate mortgage transaction. Each involves different facts, circumstances, parties, and possibly different applicable laws. As to each of these claims, the rights of each SMJ defendant may be adjudicated without affecting the rights of other SMJ defendants. The fact that the plaintiffs' claims against each SMJ defendant arise from alleged breaches of one instrument does not establish the common and undivided interest required to permit aggregation. *Thomson v. Gaskill*, 315 U.S. 442, 447 (1942); *Century Ins. Co. v. Mooney*, 241 F.2d 910, 912 (10th Cir. 1957).

Plaintiffs attempt to group the incidents together by arguing that, because Nations Holding and Nations Title are jointly liable for each claim against each SMJ defendant, the claims against those individual SMJ defendants can be aggregated. The court is not persuaded by the argument. The plaintiffs' claims against Nations Title Agency of Alabama, Inc., for instance, cannot be aggregated with claims against Nations Title Agency of Michigan, Inc., and/or Nations Title of Indiana, Inc. The allegation that Nations Holding and Nations Title are jointly liable with any of the individual SMJ defendants does not save the claim where the amount in controversy remains unmet.

Plaintiffs additionally suggest that the claims against the SMJ defendants should be aggregated under an alter ego theory of liability. As discussed in the section that follows, plaintiffs fail to make a prima facie showing of alter ego liability.

The court finds that plaintiffs' claims against Nations Title Agency of Alabama, Inc. (Counts 1, 2, and 3); Nations Title Agency of Kentucky, Inc. (Counts 37, 38, and 39); Nations Title Agency of Michigan, Inc. (Counts 67, 68, and 69); and Nations Title Agency of Missouri, Inc. (Counts 70, 71, and 72), are separate and distinct claims. Because these claims do not satisfy the amount in controversy required for exercise of federal jurisdiction and cannot be aggregated, the court

6

dismisses these claims.

### III.   PERSONAL JURISDICTION

A plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992). To demonstrate personal jurisdiction sufficient to defeat a motion to dismiss, a plaintiff need only make a prima facie showing that jurisdiction exists. *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987). In ascertaining the facts necessary to establish jurisdiction, the court must accept as true the allegations set forth in the complaint to the extent they are uncontroverted by the defendants' affidavits. *Id.* However, a plaintiff must support jurisdictional allegations by competent proof of the supporting facts if, as here, the jurisdictional allegations are challenged. *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989). The complaint and any affidavits submitted are to be construed, and any doubts are to be resolved, in the light most favorable to the plaintiff. *Fed. Deposit*, 959 F.2d at 174.

Whether this court has personal jurisdiction over a nonresident defendant is determined by the law of Kansas, as it represents "the law of the forum state." *Yarbrough v. Elmer Bunker & Assocs.,* 669 F.2d 614, 616 (10th Cir. 1982); *see also* Fed. R. Civ. P. 4(e). In analyzing a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the court must determine whether the PJ defendants' conduct falls within one of the provisions of the Kansas long-arm statute, K.S.A. § 60-308, and whether the exercise of jurisdiction would offend the constitutional guarantee of due process. *See Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1357 (10th Cir. 1990). "[T]hese inquiries are for all intents and purposes the same because the Kansas long-arm statute . . . has been liberally construed by the Kansas courts to assert personal jurisdiction to the full extent permitted by the due

7

process clause." *Flannagan v. Bader*, 905 F. Supp. 933, 936 (D. Kan. 1995) (citing *Thompson v. Chambers*, 804 F. Supp. 188, 195 (D. Kan. 1992)).  The court therefore proceeds directly to the constitutional inquiry.  *See OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1090 (10th Cir. 1998) (citation omitted).  Under the due process analysis, the "constitutional touchstone" is "whether the defendant purposely established 'minimum contacts' in the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Jurisdiction may be either general or specific.  Plaintiffs claim that both exist here. Jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum state is "specific jurisdiction."  Specific jurisdiction exists when a defendant purposely avails himself of the privilege of conducting activities within the forum state – thereby invoking the benefits and protections of the state's laws – and the claims against him arise out of those contacts. In contrast, when the suit does not arise from or relate to the defendant's contacts with the forum, "general jurisdiction" may exist when a "defendant's contacts with the forum state are so 'continuous and systematic' that the state may exercise personal jurisdiction." *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996) (citation omitted); *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1418 (10th Cir. 1988).

Plaintiffs present no evidence that the PJ defendants have any contacts, let alone systematic and continuous contacts, which would justify this court's exercise of general jurisdiction over them. Nor do the claims against the PJ defendants arise out of their purposeful availment of the jurisdiction.  The only connection to Kansas alleged in plaintiffs' complaint are the PJ defendants' connections to Nations Holding and Nations Title, their parent companies.

8

Plaintiffs clarify in their response that general and specific jurisdiction exist based on the theory that the PJ defendants are alter egos of the parent companies. Nations Holding and Nations Title are Kansas companies, headquartered in Kansas, advertising in Kansas, doing business in Kansas and, according to plaintiff, are "funneling all of their business, including all of the business of their 'local branch offices' [the PJ movants] through their office in Kansas" in a continuous and systematic manner. Plaintiffs also rely on the alter ego theory to argue that specific acts performed by Nations Title and Nations Holding in Kansas on behalf of the PJ defendants gives rise to this forum's specific jurisdiction over them. This court must determine whether it is appropriate to impute the contacts or the acts of Nations Holding and Nations Title to the PJ defendants under an alter ego theory.

## A.  Alter Ego Doctrine

Generally, a holding or parent company has a separate corporate existence and is treated separately from the subsidiary. Under the "alter ego" doctrine, jurisdiction over a nonresident subsidiary may arise if it is merely an alter ego of the resident parent, that is, if the parent so controls and dominates the subsidiary as in effect to disregard its independent corporate existence. In such a case, the acts or presence of the parent in the forum provide a basis for jurisdiction over the subsidiary even if it had no contact with the forum state. For a defendant to be subject to personal jurisdiction under the alter ego doctrine, the plaintiff must make a prima facie showing "that application of Kansas law would result in 'piercing the corporate veil or imposing liability through agency principles.'" *Luc v. Krause Werk GMBH & Co.*, 289 F. Supp. 2d 1282, 1288 (D. Kan. 2003).   The "[p]ower to pierce the corporate veil is to be exercised reluctantly and cautiously." *Amoco Chems. Corp. v. Bach*, 567 P.2d 1337, 1341 (Kan. 1977).

The determination of an organization's legal status under the alter ego doctrine is a question of fact. *Commerce Bank, N.A. v. Liebau-Woodall & Assoc., L.P.*, 20 P.3d 88, 93 (Kan. Ct. App. 2001). Factors determinative of whether a subsidiary is a mere alter ego of a parent corporation include: (1) whether the parent owns all or a majority of the capital stock of the subsidiary; (2) whether the organizations have common directors or officers; (3) whether the parent finances the subsidiary; (4) whether the parent subscribed to all of the capital stock of the subsidiary or otherwise causes its incorporation; (5) whether the subsidiary has grossly inadequate capital; (6) whether the parent pays the salaries or expenses or losses of the subsidiary; (7) whether the subsidiary has substantially no business except with the parent, or no assets except those conveyed to it by the parent; (8) whether in the papers of the parent, and in the statements of its officers, the subsidiary is referred to as such or as a department or division; (9) whether the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent; and (10) whether the formal legal requirements of the subsidiary as a separate and independent organization are not observed. *Id.*; *see also Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373 (10th Cir. 1980); *Dean Operations, Inc.*, 896 P.2d 1012, 1017 (1995).

Meeting one of these factors is not enough. For instance, mere ownership of all the stock of a subsidiary will not, in and of itself, be enough to disregard its independent corporate existence and subject it to the jurisdiction of the parent's state. *Farha v. Signal Cos.*, 532 P.2d 1330, 1337 (Kan. 1975). Likewise, the fact that two corporations may have common officers, that one is the parent of the other, or that the parent selects from its own directors and officers the majority of directors of the other is, without more, insufficient to warrant disregard of the corporate entity. *Schmid v. Roehm GmbH*, 544 F.Supp. 272, 275 (D. Kan. 1982).

**B.  Discussion**

In their complaints, plaintiffs assert facts relevant to the second and sixth alter ego factors listed above: (1) the PJ defendants share a corporate secretary, Hiram Blomquist, a Kansas resident; and (2) "Nations Holding pays all claims" and "Nations Holding and Nations Title are ultimately liable for any viable claims made against the Nations Agencies."  (Doc. 1, at 3.)  Through affidavits submitted in opposition, the defendants rebut the latter assertion, averring that the individual NTAs are liable for their own losses and liabilities.  Furthermore, affidavits of the current president of each PJ defendant establishes the that each of the ten PJ defendants seeking dismissal of the action are incorporated in their respective states and have their principal places of business in that state; Nations Title and/or Nations Holding do not pay the salaries, expenses, or losses of the PJ defendants; defendants dispense funds for their operations from their home offices; defendants keep their own corporate records and files in their home offices; defendants do not advertise or solicit business in Kansas; defendants have not sent and do not send agents to Kansas to solicit business; defendants do not hold in-person director meetings in Kansas; and the support provided by Nations Holding to each of the PJ defendants is contractual.   (Doc. 20, Ex A – I.)

In an effort to meet their burden to establish a prima facie case for jurisdiction, plaintiffs' affidavits claim that (1) evidences of incorporation show each PJ defendant has Kansas ties through its officers, (Doc. 27, Perry Aff. ¶¶ 36–37); (2) the contracts alleged to be breached were signed on behalf of the Nations Agencies by a handful of individuals who are Kansas residents, (Doc. 27, at 2–3); (3) on their company website and in other public communications, Nations Title and Nations Holding hold the Nations Agencies, including the PJ defendants, out as "company-owned," (Doc. 27, at 3–4); (4) the internet email address suffix, "@nationstitle.com," is the same for all PJ

defendants; (5) the Federal Trade Commission ("FTC"), in a 2006 Decision and Order involving defendants, described the Nations Agencies as "'57 wholly-owned subsidiaries . . . in 20 states'" (Doc. 27, at 6); (6) from plaintiffs' perspective, Nations Holding and the PJ defendants acted as one entity in regard to title insurance claims they processed for plaintiffs.  (Doc. 27, at 5–6).

The court finds that, other than the allegations that there are common directors or officers, the facts alleged by plaintiffs are not relevant to the alter ego factors this court is required to consider, and do not substantiate plaintiffs' alter ego claim.  Even viewed in the light most favorable to plaintiffs, the evidence establishes nothing more than that each Nations Title Agency is a wholly-owned subsidiary of Nations Title and/or Nations Holding.

The court finds that plaintiffs fail to make a prima facie showing that the PJ defendants are alter egos of Nations Holding and/or Nations Title.  Therefore, the activities of Nations Title and Nations Holding in Kansas cannot be imputed to each of the individual Nations Title Agencies for the purpose of assessing the PJ defendants' general business contacts with Kansas.  Because none of the PJ defendants have established "continuous and systematic general business contacts" with Kansas, or purposefully availed themselves of the privilege of conducting business in this state, an exercise of personal jurisdiction over them is improper.  *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1081 (10th Cir. 2004).

Plaintiffs assert that they will be able to provide more evidence to support an alter ego theory after discovery is complete, and request that the court deny PJ defendants' Motion to Dismiss motion as premature so that the parties may conduct discovery on the alter ego doctrine.  (Doc. 26, at 8.)  The court finds that, on the record before it, the court is able to determine that plaintiffs have failed to meet their burden of establishing a prima facie case that minimum contacts exist between

the individual defendants and the State of Kansas.  Further discovery regarding plaintiffs' alter ego

theory is not necessary.  The dismissal of the individual defendants is without prejudice.  *See*

*Hollander v. Sandoz Pharms. Corp.*, 289 F.3d 1193, 1216–17 (10th Cir. 2002) (holding that a

dismissal for lack of personal jurisdiction should be without prejudice).

      **IT IS THEREFORE ORDERED** that defendants' Motions to Dismiss (Docs. 20, 31) are

granted.

      **IT IS FURTHER ORDERED THAT** plaintiffs' claims against Nations Title Agency of

Alabama, Inc., Nations Title Agency of Kentucky, Inc., Nations Title Agency of Michigan, Inc., and

Nations Title Agency of Missouri, Inc., are dismissed with prejudice for lack of subject matter

jurisdiction.

      **IT IS FURTHER ORDERED THAT** Nations Title Agency of Alabama, Inc., Nations Title

Agency of the Carolinas, Inc.,  Nations Title Agency of Georgia, Inc., Nations Title Agency of

Indiana, Inc., Nations Title Agency of Kentucky, Inc., Nations Title Agency of Maryland, Inc.,

Nations Title Agency of Michigan, Inc., Nations Title Agency of Ohio, Inc., Inc., and Nations Title

Agency of Oklahoma, Inc., are dismissed from the action without prejudice for lack of personal

jurisdiction.

      Dated this 25th day of September 2008, at Kansas City, Kansas.

                          **s/ Carlos Murguia**
                          **CARLOS MURGUIA**
                          **United States District Judge**